JOHNSON MILLER v. R. S. GRAY ET AL; COLGATE & CO. v. GRAY ET AL.

**Assignment—Benefit of Creditor—Wife's Dower.**
The wife is entitled to dower in the real estate of her husband assigned for the benefit of creditors.

**Execution—No Property Found—Levied on Partnership Property—Suit to Enforce.**
A creditor who has had an execution returned "no property found," may have another levied on the interest of his creditor in partnership property and may thereafter enforce his lien by a suit in equity.

**Debtor's Right to Maintain Family.**
It is a well settled principle that a creditor has no enforcible claim on the capacity or personal service of an insolvent debtor and the law will permit him to appropriate the products of his industry and skill to the maintenance of his family.

**Same.**
But as indulgent as the law is, it will not permit a debtor, after acquiring property by his skill, industry or credit, to secure to himself an estate by making his family the depository of the title for the purpose of defeating his creditors.

**Insolvent Debtor Doing Business in His Wife's Name—System of Bankruptcy.**
If an adventurer in trade may, on becoming insolvent, drop his own name and assume that of his wife as the head of a business and thereby become rich and yet defy his creditors, a more convenient system of

bankruptcy could not be conceived, and such acts cannot be tolerated by the Courts.

November 27, 1867.

APPEAL FROM WOODFORD CIRCUIT COURT.

OPINION OF THE COURT BY JUDGE HARDIN:

On the 5th day of April, 1859, Robert S. Gray, being largely involved in debt, conveyed and assigned to Dudley R. Ball in trust for the benefit of his creditors his entire estate, consisting of a house and small tract of land, near the town of Versailles, four slaves, and some personal estate.

The liabilities of Gray, being found to exceed the value of his estate, the trustees brought a suit in equity, in the Woodford Circuit Court, for a settlement of his accounts, and a distribution of the assets, *pro rata,* among the creditors. In that suit, Mariah Gray, the wife of said R. S. Gray, and who was the sister of the trustee Ball, by an answer asserted her contingent right of dower, in the real estate conveyed to Ball by her husband, but consented that its value might be estimated and adjudged by the court to her separate use, which was done, and there was thus secured to her the sum of $500.

The slaves lately owned by R. S. Gray, consisting of one man name Jim, a woman named Henrietta, and her two children, named Woodford and Susan, having been purchased by Joseph S. Woolfork, a relative of said Mariah Gray, said Woolfork by his deed dated, the 18th of April, 1859, conveyed the slaves to her, for her separate use for life, with remainder to her children.

At the date of said R. S. Gray's assignment, he appears to have been in possession of a tract of about 400 acres of land, near Versailles, in Woodford county, known as the "Ben P. Gray farm," which he had purchased, but on his becoming insolvent, without having paid for the land, his contract of purchase was rescinded. And said D. K. Ball, assuming to act as trustee for his sister, Mariah Gray, rented said farm for the year 1859, and hired slaves to cultivate it in addition to those conveyed to Mrs. Gray by Woolfork, with an arrangement with Gray and wife that said R. S. Gray should act as the agent of his wife, in the management and superintendence of the farm so as to be cultivated, and

that the proceeds of the farming business should be first applied to the rent of the farm and hire of the slaves, after which, the net profits should belong to said Mariah Gray.

This arrangement was continued from year to year, and Ball rented the farm and hired slaves to labor upon it for 1860 and 1861. And, in the meantime, R. S. Gray bought supplies and stock, and sometimes hired labor, as agent, and in that capacity sold produce and paid rents and other expenses.

Ball appears to have rented one half of the Ben P. Gray farm, under the same arrangement for 1862, and one-fourth of it for 1863, and to have hired slaves as before. But in 1862, W. H. Rearden claimed to have purchased, in his own right, one-fourth part of the tract, and also to have purchased, conditionally, another fourth part, for R. S. Gray, and said Rearden and Gray became associated as partners in farming in 1862, and they culti-vated in copartnership the half of the Ben P. Gray farm, rented by Ball, and the one-fourth, claimed to have been purchased by Rearden for Gray, as so much land furnished by Gray, and also the remaining fourth of that farm, owned by Rearden, and his own farm of 110 acres, and another tract rented by him, as fur-nished by him. This partnership was not sanctioned by Ball, and neither he nor Mrs. Gray seems to have been a party to it.

On the 28th of January, 1863, Rearden appears to have sold to Mrs. Gray his said farm of 110 acres, at the price of $11,000, and on the 8th of June, 1863, he conveyed it to said Ball as trustee for Mrs. Gray, acknoweldging in the deed the payment of $1,000 of the purchase money.

Notwithstanding this transaction, Rearden and R. S. Gray ap-pear to have carried on a large farming business as partners, again in 1863, without the sanction of Ball, or even that of Mrs. Gray, so far as appears in this record, the 110 acres purchased of Rear-den, and so much of the B. P. Gray farm as was rented by Ball, being regarded as land furnished to the firm by Gray, while the interest of Rearden in the B. P. Gray farm, and other lands rented by Rearden, were furnished by him.

In August, 1863, the appellants, Johnson Miller and Samuel Colgate & Co., who were judgment creditors of R. S. Gray, and on whose judgment, which were rendered in 1859, executions had been issued, and returned "no property found," again sued out

their executions, which were levied upon a quantity of hemp, wheat and barley, grown on the lands cultivated by Gray and Rearden, in partnership; the levy being intended to bind an undivided interest of Gray in the property.

These suits were brought by the appellants, against Gray and Rearden, to enforce the lien on Gray's interest in the property, claimed to have been acquired by the levy.

Gray having answered, denying that he had any interest in the property, and setting forth that the interest sought to be subjected belonged to his wife, or Ball, in trust for her separate use, amended petitions were filed, charging that her claim was false and fraudulent; that the tract of land held by Ball as trustee was purchased with Gray's money; that the conveyance of slaves to her by Woolfork was made in fraud of Gray's creditors, and that the property levied on, and all the means held and claimed as belonging to Mrs. Gray, were in fact Gray's property, and subject to his debts.

The answer of Gray and wife and Ball sufficiently controvert the averments of fraud, in the conveyance of the slaves and purchase of the land conveyed to Ball, as well as the charges that the property in controversy, belonged to Gray, but with other estate, claimed by Mrs. Gray, was so held and claimed in fraud of R. S. Gray's creditors.

The circuit court dismissed the petitions, adjuding the property to belong to Mrs. Gray, and Miller and Colgate & Co. have severally appealed to this court.

It is insisted for the appellees, and, we think, in accordance with principles and authority, that a creditor has no enforcible claim on the capacity or personal service of an insolvent debtor; and the law will permit the debtor in defiance of the claim of his creditors, to appropriae the products of his industry and skill to the comfortable maintenance of his family.

But indulgent as the law is, and should be, to those obligations, which naturally arise out of the domestic relations, it will not permit a debtor, after acquiring money or property, by his credit, or his industry, or skill, to secure to himself the use and enjoyment of an estate, by making his family the nominal depositaries of the title, merely to cover the property, and defeat the claims of creditors. (Doyle, &c. v Slaper, &c., 1 Dana, 538).

We conceive the material inquiry in this case to be, not whether R. S. Gray's creditors could tax his capacity, or divert from his family, so much of his earnings as may have been reasonably necessary for their support, but whether the produce levied upon by the sheriff, or some interest in it, was his property, as the product of his personal skill and industry, or of his capital.

The theory of the defense is, that, although Gray may, by adding his immediate services, and previous earnings and acquisitions, to the use of property owned by his wife, and obtained by the credit and assistance of Ball, have contributed much to the production of the hemp, and barley, in controversy, inasmuch as in doing so, he acted as agent of his wife, and for the very purpose of assisting her to acquire an estate, which would be beyond the reach of his creditors, he had a right to do so in defiance of his creditors, although he thus accumulated a large estate in the name of his wife.

We cannot sanction a principle which seems to us so manifestly unjust.

If an adventurer in trade may, on becoming insolvent, doff his own name, and assume that of his wife, as the head of a business establishment, and under better auspices become rich, and yet defy the claims of those who have been the first to give him credit, a more convenient system of bankrupty can scarcely be conceived.

As an incident to the right of a debtor to maintain his family from the proceeds of his labor or skill, it was held by this court in the case of Robinson v Huffman & Wife, 15 B. Monroe, 82, that the husband might make such repairs as necessary on the house of the wife, to make it habitable, without rendering such improvements liable to the claims of creditors, but the language of the opinion in that case is such as to restrict the husband's right to enhance the value of the wife's property to such improvements only, as were necessary to make the house comfortable as a dwelling for his family.

The principle decided in that case, and which have been recognized in Doyle, &c. v Slaper, &c., *supra,* does not extend so far as to sustain the appellees in this case.

But it seems to us that whether the claim of Mrs. Gray to the land and slaves conveyed to her use by Rearden and Woolfolk is fraudulent or not, her claim, and interest in the hemp, wheat

and barley in controversy, should be restricted to such proportion thereof, as is the product of the capital used as her estate, in producing it; that is, the fair rent of the land vested to her, and rented by Ball and the slaves, claimed by her and hired by Ball, and the use of any other capital which belonged to her, and that after excluding that and the interest of Rearden, in the property, levied upon, the appellants acquired a lien by the levy of their executions, on the residue, as the property of R. S. Gray, which may be enforced.

On the return of the cause, the court will by a commissioner ascertain the relative interest of the parties in said property, on the basis above indicated.

Wherefore, the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.

Judge Robertson not concurring.

*Lindsey, Porter,* for appellants.

*Hunt, Beck & Clark,* for appellees. ·